# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AIMSLEY ENTERPRISES INC., ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**DOUG E. MERRYMAN; OPMNY, LLC; AND AFFINITAS MEDIOS DE PAGOS, SAPI DE CV**,<br><br>Defendants. | CASE NO. 19-cv-02101-YGR<br><br>**ORDER GRANTING IN PART MOTION OF AFFINITAS MEDIOS DE PAGOS, SAPI DE CV TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS;**<br>**ORDER DENYING MOTION OF DEFENDANTS DOUG E. MERRYMAN AND OPMNY, LLC TO DISMISS**<br><br>Re: Dkt. Nos. 52, 61 |

Plaintiffs[1] filed their First Amended Complaint on September 3, 2019 in this action (Dkt. No. 50 ["FAC"].) As against defendant Affinitas Medios De Pagos, SAPI de CV ("AMDP"), the FAC alleges claims for negligence, conversion, a common count for money had and received, violation of the California Unfair Competition Law (Cal. Business & Professions Code section 17200, "UCL"), and, in the alternative, breach of contract. The FAC alleges separate claims as against defendants Doug E. Merryman and OPMNY, LLC, for conversion, money had and received, violation of California Penal Code section 496 and the UCL.

Presently pending before the Court are two motions: (*i*) AMDP's motion to dismiss the FAC pursuant to Rules 12(b)(1), (3), and the forum non conveniens doctrine; and (*ii*) Merryman and OPMNY's motion to dismiss the FAC under Rules 12(b)(1) and (6). The Court, having

---

[1] Plaintiffs in this action are: Aimsley Enterprises Inc., Aldaine Technologies Inc., Cadwell Systems Inc., Desmond Quantics Inc., Estrell Industries Inc., Everly Holdings Inc., Halsten Developments Inc., Hannon Electronics Inc., Kennedy Alliances Inc., Lakeford Developments Inc., Lawton Innovations Inc., Maisy Operations Inc., Parkgate Solutions Inc., Portling Strategies Inc., Quinnley Group, Inc., Redcrest Technologies Inc., Rosland Operations Inc., and Vueva Operation Inc.

reviewed thoroughly the papers filed in support of and in opposition to the motions, the admissible evidence,[2] and good cause appearing, the motion of AMDP is **GRANTED** and the motion of Merryman and OMPNY is **DENIED**. The Court briefly outlines the allegations in the FAC, and then considers each motion in turn.

## I. SUMMARY OF ALLEGATIONS

### A. Plaintiffs' Allegations

Plaintiffs are companies engaged in online marketing of dietary supplements and beauty products. Between February 26 and March 27, 2018, each of the plaintiffs individually entered into a substantially identical Trade Affiliation Agreement[3] (hereinafter, "Agreements") with defendant AMDP, a company[4] based in Mexico, pursuant to which AMDP was to provide authorization, processing and settlement services for plaintiffs' customers' credit card payment transactions. Under the terms of the Agreements, AMDP received fees for its services which it deducted from sales proceeds, in addition to withholding 10% of proceeds as a reserve against future transactions, and the remainder of the proceeds were transferred to a single deposit account for all plaintiffs. (FAC ¶ 35.)[5]

Plaintiffs began processing online sales transactions through these accounts in late May

---

[2] The Court addresses the request for judicial notice and objections to evidence herein.

[3] An example of the two-part Agreement is attached to the FAC as Exhibits A and B.

[4] Though plaintiffs allege that AMDP is a "bank," AMDP's head of operations, Martin Juarez Audiffred describes AMDP as an "acquirer" which

> acts like a bank 'settling' or paying funds related to transactions from the consumers' banks for credit card, debit card, gift card and loyalty card purchases for payment to the merchants for their goods and services. In doing so, Affinitas essentially extends credit to merchants who desire to accept credit card payments, guaranteeing the transactions and taking on the risk of a consumer reversing the charge through the card issuing bank, known as chargebacks, which can be assessed as late as 12 months after the transaction.

(Audiffred Decl. ¶ 3.)

[5] Plaintiffs allege that the terms of the fee schedules in their respective agreements were: each plaintiff would pay a one-time merchant set-up and affiliation fee of $500 per merchant account; and a monthly fee of $300 per month; a discount rate of 3.65% to 3.95% depending upon the chargeback rate; a transaction fee of $0.30 USD; a transaction refund fee of $0.70 USD; a chargeback fee of $40 (< 1%) to $50 (>1%); a chargeback re-presentment fee of $25. AMDP would deduct its agreed upon fees in addition to withholding 10% of the transaction proceeds as rolling reserves and would deposit the net proceeds on a weekly basis to a single deposit account for all of the plaintiffs herein. (*Id.*)

2

2018. Plaintiffs allege that in early June 2018, they noticed net proceeds were not reconciling with the sales volume and proceeds were not being deposited timely or consistently. (*Id.* ¶ 37.) In late July/early August 2018, they stopped receiving deposits from AMDP but continued to have fees debited from the collective Settlement Account. (*Id.*)

Plaintiffs allege that MMG[6] was directed to contact defendant Merryman about the funds plaintiffs believed they were owed. (*Id.* ¶ 38.) Merryman informed MMG that there were excessive chargebacks to the merchant accounts but did not provide data to back up that statement. (*Id.*) Plaintiffs allege they began to lose revenue in August to October of 2018 because of "high decline rates" and eventually had to cancel all recurring subscriptions,[7] resulting in lost revenue. (*Id.* ¶ 39.)

Plaintiffs further allege that on December 4, 2018, AMDP representative Martin Juarez Audiffred acknowledged AMDP owed plaintiffs "a final settlement amount of no less than *$269,076.36*, and agreed that [AMDP] would pay that amount pending approval from [its] Board." (*Id.* ¶ 40, emphasis in original.) After no payment was forthcoming and plaintiffs (through MMG) demanded payment of the final settlement amount, Audiffred explained that the delay in payment was due to a separate action AMDP had filed against Merryman and his company, OPMNY. (*Id.* ¶ 41.) Plaintiffs objected that they had no contractual relationship with Merryman and OPMNY and the separate action should not affect payment to them. (*Id.*) Eventually, after further demands, AMDP stated that the final settlement amount discussed in December 2018 was subject to deductions for fees still owed to AMDP, and that plaintiffs were owed only a net amount of

---

[6] Plaintiffs allege that the single account was controlled by "MMG," plaintiffs' common manager and administrator. (FAC ¶ 35.) MMG apparently stands for Moo Media Group, Inc., not a party to this action. (*See* Declaration of Martin Juarez Audiffred, Dkt. No. 61-2, ¶ 4.)

[7] According to the Audiffred declaration, plaintiffs' business model is to offer free or discounted trials of their beauty and supplement products, requiring the customer to submit a credit card payment to cover shipping and handling. (Audiffred Decl. ¶ 5.) Thereafter, customers automatically receive and are billed for the products on a recurring basis, such as every 30 days, unless the customer cancels the subscription. (*Id.*) Plaintiffs filed a separate document objecting to Audiffred's declaration (Dkt. No. 64-1), in violation of Rule 7-3(a) of this Court's Local Rules. The objections are directed at paragraphs in which Audiffred describes plaintiffs' business model and how they approached defendants to provide credit card processing services, not to any facts relevant to the matters at issue in the motion. For these reasons, the objections are **OVERRULED**.

3

$867.50 in total. (*Id*. ¶ 43.)[8] Plaintiffs' instant lawsuit followed.

## B. Allegations Incorporated in the FAC From Other Actions

Plaintiffs further base their claims upon, and incorporate into the FAC, allegations made by other parties in two separate actions: (1) AMDP's complaint in a separate action in this District against defendants Merryman and OPMNY, entitled *Affinitas Medios de Pagos S.A.P.I. C.V. v. Merryman, et al.*, Case No. 18-cv-5628-YGR, the allegations of which plaintiffs characterize as admissions by AMDP (*see id*. ¶¶ 45-79); and (2) a complaint filed by Merryman's business partner, Brent Gephart, in the District of Nevada entitled *Brent Gephart v. Doug Merryman*, Case No. 2:18- cv-01670-GMN-CWH (*see id*. ¶¶ 80-96).[9] With respect to the former, plaintiffs repeat the allegations therein to conclude and allege that AMDP was transferring plaintiffs' sales proceeds to OPMNY, which was in turn was transferring them to another company (Affinitas, Inc.) controlled by defendant Merryman. (*Id*. ¶ 56.) Merryman is alleged to have siphoned off a percentage of the funds and purported to settle the accounts with merchants such as plaintiffs while charging them fees in excess of those permitted in their Agreements. (*Id*. ¶¶ 56-59.)

With respect to the *Gephart* complaint, plaintiffs also incorporate allegations therein as part of the FAC, reciting that Gephart (not a party here) alleged Merryman was commingling funds and using certain of their companies' funds for his personal gain, and was settling merchants' accounts on behalf of AMDP without a proper license to do so, and without following federal regulations and "Card Brand" rules. (*Id*. ¶¶ 87, 89, 91, 92.)

---

[8] In contrast to plaintiffs' allegations in the FAC, Audiffred declares that AMDP noticed excessive rates of chargebacks from plaintiffs' customers, in excess of the 1% limit in section 5 of the Agreements. (Audiffred Decl. ¶¶ 11, 12.) Plaintiffs were given daily notifications that excessive chargebacks could result in shutdown of their accounts, but continued to have transactions with declines, refunds, and chargebacks between 1.5% and 6.8% of their total transactions, with only about 42% of transactions resulting in a successful sale. (*Id*.) AMDP contends it terminated plaintiffs' agreements as of January 2019 due to refunds and chargebacks reaching 6.5% of all transactions. (*Id*. at ¶ 13.) The Court does not reach these factual disputes in resolving the instant motion.

[9] Paragraphs 46 through 73 all begin "Affinitas alleges" or "Affinitas admits," concluding at paragraph 74 "[a]ll this means . . . ." and alleging other conclusions at paragraphs 75 to 79 based on the allegations in the separate *Affinitas* action. (FAC ¶¶ 46-79.) Similarly, the allegations in paragraphs 80 to 94 of the FAC herein simply repeat the allegations of the *Gephart* action and then draw conclusions from the allegations in that other action.

4

Based on the allegations of those other complaints, plaintiffs claim in the FAC that their Agreements with AMDP "had an unlawful object" and are "void as an illegal contract" because AMDP's performance depended upon using the "illegal services" of OPMNY, an entity that was not qualified or licensed to perform those services. (*Id*. ¶ 96.)

## III. MOTION OF AMDP TO DISMISS FIRST AMENDED COMPLAINT

AMDP moves to dismiss the FAC under Rules 12(b)(1) and (b)(3), and alternatively under the doctrine of *forum non conveniens*. AMDP contends that the Court lacks subject matter jurisdiction over the claims because plaintiffs cannot satisfy the amount-in-controversy requirement for purposes of diversity jurisdiction. AMDP further contends that the action should be dismissed based upon the parties' forum selection clause in their respective Trade Affiliation Agreements, which require that disputes be adjudicated or arbitrated in Mexico. The Court considers each argument in turn.

### A. Lack of Diversity Jurisdiction Based On Insufficient Amount in Controversy

With respect to its lack of diversity jurisdiction argument, AMDP contends plaintiffs do not meet the amount-in-controversy requirement for two reasons: (1) the Affiliation Agreements limit each plaintiff's recovery such that they cannot meet the jurisdictional threshold "to a legal certainty;" and (2) plaintiffs have aggregated damages improperly in alleging the amount-in-controversy in their complaint.

The amount in controversy is generally determined from the face of the complaint. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-289 (1938); *see also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-348 (1977). Thus, dismissal of a complaint that alleges the jurisdictional minimum is only appropriate "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (statutory limitation on damages). In the *Pachinger* case, the Ninth Circuit stated that: "[o]nly three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the

amount of damages was claimed merely to obtain federal court jurisdiction." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (citing 14A Wright, Miller, and Cooper, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction, § 3702 at 48–50 (2d ed. 1985)). However, more recent Ninth Circuit authority holds that a contractual damages limitation, and indeed any valid defense that might appear from the face of the complaint (*e.g.*, statute of limitations), will not operate to preclude jurisdiction simply because it would reduce recovery below the $75,000 threshold. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction").

Here, AMDP has raised contractual damage limitations as a basis for finding plaintiffs cannot meet the jurisdictional amount. AMDP contends that section 10(c) of the Agreement limits the damages that plaintiffs may obtain against them to an award equal to the last three months of fees charged, and prohibits tort damages, including punitive damages.[10] (FAC, Exh. A at 18 of 39.) AMDP further contends that none of the plaintiffs was charged fees in excess of $75,000 for the last three months preceding the litigation. (Audiffred Decl., ¶¶ 17-18, Exh. 5.) However, based on the Ninth Circuit's holding in *Geographic Expeditions*, these defenses to the jurisdictional amount are not a proper basis for granting dismissal under Rule 12(b)(1). *Geographic Expeditions*, 599 F.3d at 1108. Thus, these grounds for dismissal fail.

---

[10] Section 10(c) of the Agreement states:
10(c). Limits of Responsibility. The Trade Affiliate acknowledges that all the quotas and commissions paid to [AMDP] for the rendering of the Services of processing are limited in connection with the funds delivered to the Trade Affiliate for the Transactions and consequently the availability of [AMDP] to render the Services is based on the limitation of responsibilities contained in the Agreement. Therefore, *any obligation on behalf of [AMPD]* in terms of the Agreement, whether in favor of the Trade Affiliate or any other person, regardless the cause of the responsibility, *shall not exceed, in total, to an amount equal to the total amount of the quotas and commissions paid by the Trade Affiliate during the last 3 (three) months*, prior any event arises under which [AMDP] has any responsibility. *In no event shall [AMDP] or its representatives, agents, officers, directors or employees will be liable for indirect, consequential, special or punitive damages*.
(FAC, Exh. A at 18 of 39.)

6

Second, AMDP contends that plaintiffs have aggregated their alleged damages improperly for the multiple named plaintiffs. Aggregation of damages for multiple named plaintiffs in order to meet the jurisdictional threshold is not permitted if the obligation is owed to individual plaintiffs separately. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir. 2001). Here, each plaintiff entered into its own separate Affiliation Agreement with AMDP at a different time, and each stopped processing at a different time. However, AMDP concedes on reply that Everly's claim for proceeds at issue is at least $75,000 (Reply at 3:16-20) *before* its claims for treble damages and other relief are taken into account. Because the contractual limitations on the amount and type of damages recoverable cannot be considered in determining the amount in controversy at the pleading stage, at least one of the named plaintiffs has claims exceeding the jurisdictional amount. "[T]he threshold requirement of § 1367(a) is satisfied in cases. . . where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005). Therefore, this basis for dismissal for lack of jurisdiction fails as well.

### B. Dismissal for Improper Venue

AMDP also seeks dismissal of this action for improper venue based upon the Agreements' forum selection clause.[11] Under the Agreement, disputes related to reserve funds must be submitted to arbitration in Mexico (FAC, Exh. A, section 8) and all other disputes related to the interpretation or performance of the Agreement must be litigated in the Mexican Federal Court in Mexico City (*id.*, section 26). In addition, the parties agreed that "all the operations, Services and Transactions under the Agreement shall be considered [to] occur in Mexico" and "the business operations are carried out in Mexico" (*id.*, section 25(b)), and that the Affiliation Agreements were executed "in Mexico, Federal District, on July 27, 2015." (*id.*, Exhibit A, Additional Services).

---

[11] AMDP brought its motion pursuant to section 1404 and Rule 12(b)(3) in the alternative, in an abundance of caution. Settling a split of authority, the Supreme Court's 2013 decision in *Atlantic Marine* determined that, where a party asserts venue is improper due to a forum selection agreement, the appropriate procedural mechanism is a motion under section 1404(a), rather than a motion to dismiss pursuant to Rule 12(b)(3). *Atlantic Marine*, 571 U.S. 49, 59-60. The Court is bound by *Atlantic Marine*.

7

When enforcement of a forum selection clause calls for venue in a foreign court, as here, dismissal is appropriate. *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60-61 (2013); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F3d 1081, 1087 (9th Cir. 2018) (*citing Atlantic Marine*). Forum selection clauses are presumed valid and should be enforced unless doing so clearly would be "unreasonable and unjust, or the clause was invalid for such reasons as fraud or overreaching." *Atlantic Marine*, 571 U.S. at 62-63; *Sun,* 901 F.3d at 1088. The burden is on plaintiff to show why the court should not enforce the forum selection clause. *See Atlantic Marine*, 571 U.S. at 63; *Sun*, 901 F.3d at 1087. Thus, a forum selection clause should be enforced unless plaintiffs can make a strong showing that: "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Sun*, 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)); *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (same). Plaintiffs argue all three exceptions apply here.

### *1. Agreements Are Void for Illegality in their Entirety*

With respect to the exception for invalidity of the venue provision due to "fraud or overreaching" plaintiffs argue that AMDP's allegations in its *own* complaint against Merryman and OPMNY show that OPMNY violated money transmission laws. Thus, plaintiffs contend the Agreement had an illegal object and is void in its entirety.

The fraud exception to the general rule of enforceability "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the [forum selection] clause is unenforceable [but r]ather . . . [that the] forum-selection clause in a contract is not enforceable *if the inclusion of that clause in the contract* was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (emphasis supplied); *see also Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) (citing *Scherk*). "[A] party seeking to avoid enforcement of the forum selection clause under the first exception must show that the *inclusion of the clause itself* into the agreement was improper." *LaCross v. Knight*

8

*Transportation, Inc.*, 95 F. Supp. 3d 1199, 1204 (C.D. Cal. 2015) (citing *Scherk* and *Batchelder*). Moreover, where a contract can be performed in a legal manner, it will not be declared void due to *performance* in an illegal manner. *Mcintosh v. Mills*, 121 Cal. App. 4th 333, 346 (2004) (the doctrine of illegality considers whether the *object* of the contract is illegal, not manner in which it is performed); *Vagim v. Brown*, 63 Cal.App.2d 504, 511 (1944); Cal. Civil Code 1636 (contract must be interpreted to give it lawful effect where possible). Plaintiffs concede the object of the Agreement was to provide credit card processing services. The FAC does not allege an illegal object, but instead alleges an illegal manner of performing a lawful object by AMDP's agents (Merryman and OPMNY). Plaintiffs offer no evidence that the forum selection clause *itself* was procured by fraud or overreaching.[12] Thus, plaintiffs fail to meet their burden on this exception.

### 2. *Enforcement Would Contravene Strong Public Policy of the Present Forum*

Plaintiffs contend that enforcement of the forum selection clause would contravene a strong public policy of the forum because the California and federal money transmission and banking laws they allege defendants violated are matters of fundamental public policy of California and the United States.

"While a court may consider factors relating to the public interest (such as the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law), those factors will rarely defeat" a motion to dismiss based upon a forum selection clause. *Sun*, 901 F.3d at 1088 (internal quotations and punctuation omitted). Here, plaintiffs sought out and contracted with a Mexican credit card processor, not a U.S. processor, and in doing so agreed to be subject to the terms and conditions of VISA and MasterCard's *international* rules as well as the rules of Promoción y Operación, S.A. de C.V. (PROSA).

---

[12] To the extent plaintiffs seek judicial notice of the complaints filed in other actions and offer the allegations therein for the truth of the matter asserted, the allegations in those other complaints are neither a proper subject of judicial notice nor relevant to the issue of whether the forum selection clause itself was procured by fraud or overreaching. Plaintiffs' request for judicial notice of the documents at Exh. 1 (*Affinitas* complaint) and Exh. 2 (*Gephart* declaration) is therefore **DENIED**.

1  (Agreement §II(3)(b).) Plaintiffs further agreed to comply with the governing Security Regulations of the Information in Mexico (RSIM) and that Mexican law would apply to the Agreement. (*Id.* at §§ 22, 25(b).) Plaintiffs' arguments that California and U.S. law apply and implicate fundamental public policies of the current forum are undercut by the terms of their Agreements. Thus, the Court concludes that the public policy factor favors venue in Mexico, and plaintiffs have failed to establish otherwise.

### 3. *Mexican Forum So Gravely Difficult and Inconvenient That Plaintiffs Would Be Effectively Deprived of Their Day in Court*

With respect to the third factor, plaintiffs argue that a Mexican forum would be so difficult and inconvenient as to deprive them of their day in court, citing statements from a United States Department of State 2018 Human Rights Report on Mexico for the proposition that Mexican courts are susceptible to improper influence by public and private entities, including transnational criminal organizations, and that civil actions for damages require that "authorities must first find the defendant guilty in a criminal case." (Plaintiffs' RJN, Exh. 3 at 14.)[13] Thus, plaintiffs contend they effectively would be unable to seek any damages in Mexico and would have no practical remedy. However, plaintiffs misstate the findings in the Report, which referred only to damages with respect to *human rights violations*, not routine business disputes. (*Id.*)[14] Likewise, plaintiffs' reliance on a State Department Travel Advisory for Mexico is misplaced, as it does not more than indicate travelers should exercise "increased caution." It does not describe conditions that would prevent a fair opportunity to litigate a civil action. (Plaintiffs' RJN, Exh. 4.) Neither document indicates that plaintiffs would be unable to obtain a fair trial on the disputes herein against AMDP.

A foreign forum must provide the plaintiff with "some" remedy in order for the alternative forum to be considered adequate. *Loya v. Starwood Hotels & Resorts Worldwide, Inc.,* 583 F.3d

---

[13] The request for judicial notice of this report and the travel advisory, Exhs. 3 and 4, are **GRANTED**.

[14] The Report states: "Citizens have access to an independent judiciary in civil matters to seek civil remedies *for human rights violations*. For a plaintiff to secure damages against a defendant, authorities first must find the defendant guilty in a criminal case. . . ." (Plaintiffs' RJN Exh. 3 at 14, emphasis supplied.)

10

656, 666-67 (9th Cir. 2009). The Ninth Circuit, as well as others, have found Mexico an adequate forum for litigation, despite differences in Mexican and American substantive and procedural laws. *Id.*; *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 672 (5th Cir. 2003) (finding Mexico an adequate forum despite limits on damages); *Monugian v. Desarrollo Marina Vallarta S.A. DE C.V.*, No. CV081497GAFAJWX, 2008 WL 11336862, at *6 (C.D. Cal. Dec. 15, 2008) (in case alleging fraudulent timeshare scheme, finding no evidence that dismissal in favor of Mexican forum would deprive plaintiffs of their day in court or contravene strong public policy of California and that numerous courts have so held) (collecting cases). Plaintiffs have failed to meet their burden on this exception.

### 4. Mexico Is Not an Available Alternative Forum Because Not All Defendants Are Subject to Jurisdiction There

Finally, plaintiffs contend that co-defendants Merryman and OPMNY are residents of California and are not subject to suit in Mexico, so the forum selection clause should not be enforced to dismiss AMDP from this action. Plaintiffs argue that where there are multiple defendants and only some are subject to the forum selection clause, dismissal must be denied unless *all* defendants are amenable to suit in the alternative forum.[15] However, the authority offered by plaintiffs does not account for the Supreme Court's holding in *Atlantic Marine* that, "[i]n all but the most unusual cases[,]" parties to a forum-selection clause should be bound to litigate in the forum designated by the clause. *Atlantic Marine*, 571 U.S. at 66, and dismissed in the non-agreed forum.[16]

"Where the parties have agreed to a forum-selection clause, they 'waive the right to

---

[15] AMDP is a Mexican corporation with its principal place of business in Mexico City and consented to jurisdiction in Mexico by executing the Affiliation Agreements. (FAC Exh. A, p. 32 of 39, Section 26.) There is no question that AMDP would be subject to personal jurisdiction in a Mexican forum.

[16] The only post-*Atlantic Marine* authority cited by plaintiffs for this proposition is *Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1076 (N.D. Cal. 2014), in which the court did not reach the applicability of the forum selection clause due to fact issues, but proceeded to determine whether the case should be transferred to a foreign venue under the traditional, less restrictive *forum non conveniens* standards. *Id.* at 1081, 1087. *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015), also cited by plaintiffs, did not concern a forum selection clause at all.

11

challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atlantic Marine*, 571 U.S. at 64). The party seeking to avoid enforcement of a forum selection clause bears the burden of establishing any factors that would disfavor it enforcement. *Atlantic Marine*, 571 U.S. at 67. Here, plaintiffs make no factual showing that Merryman and OPMNY would not be amenable to personal jurisdiction and service of process in a Mexican forum. Plaintiffs argue that their claims against AMDP should not be severed from the action by dismissal because defendants Merryman and OPMNY acted as agents of AMDP and all defendants' liability is intertwined. However, they sidestep the question of whether Merryman and OPMNY would be bound to the forum selection clause for those same reasons. *See GemCap Lending I, LLC v. Pertl*, No. CV 19-1472-JFW(PJWX), 2019 WL 6468580, at *11 (C.D. Cal. Aug. 9, 2019) (non-signatories to the contract can be bound by forum selection clause under theories of agency, third party beneficiary, alter ego, and estoppel, among others); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses" including non-parties closely related to the contractual relationship). Despite having appeared in this action, neither Merryman nor OPMNY raised an objection to the dismissal of AMDP based on the forum selection clause.[17]

In short, the Court does not find the purported inability to compel Merryman and OPMNY to appear in litigation in Mexico grounds for denying enforcement of the forum selection clause.

Based upon the foregoing, the motion of AMDP to dismiss the claims against it based upon enforcement of a forum selection clause under the principles in *Atlantic Marine* is **GRANTED**.

---

[17] Similarly, neither party offers relevant authority regarding whether the *Atlantic Marine* framework is altered when the forum selection clause applies to some but not all parties to the litigation. The Court is aware of out-of-circuit authority adopting a four-step test to determine whether to sever claims of the contracting party or *transfer* the entire action to the contractual forum, even as to non-signatories. *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 403-05 (3d Cir. 2017). The Court has not found authority addressing the appropriate analysis when transfer is not possible because the contractual forum is outside the United States and therefore not subject to transfer.

12

## IV. MOTION OF DEFENDANTS MERRYMAN AND OPMNY, LLC

The Court next considers the motion of defendants Merryman and OPMNY, LLC to dismiss the FAC[18] on the following grounds: (1) complete diversity of citizenship does not exist; (2) the amount in controversy requirement is not met; (3) the alter ego allegations that form the basis for Merryman's liability are insufficient; and (4) the allegations are insufficient to state claims for conversion, violation of Penal Code 496, and money had and received against both Merryman and OPMNY.[19] For the reasons stated above in connection with AMDP's motion, dismissal on the grounds of failure to allege the required amount in controversy is **DENIED**.

As to the remaining grounds offered by Merryman and OPMNY, the Court considers each in turn.

### A. Lack of Complete Diversity

Defendants argue that plaintiff Rosland Operations Inc. and OPMNY share Georgia citizenship, precluding diversity jurisdiction. In their opposition, plaintiffs concede that there is a lack of diversity with respect to Rosland (Oppo. at 7:25-27, fn. 2), but volunteer to dismiss Rosland so that complete diversity is restored, as is permitted under applicable authorities. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830; *Louisiana Municipal Police Employees' Retirement Sys. v. Wynn*, 829 F. 3d 1048, 1057 (9th Cir. 2016). Based upon that concession, Rosland is **HEREBY DISMISSED** as a party-plaintiff, and plaintiffs avoid dismissal on grounds of lack of complete diversity of citizenship.

### B. Failure to Allege Alter Ego Sufficiently As To Merryman

Next, defendants contend that Merryman is sued as the alter ego of OPMNY and allegations of alter ego liability must be alleged with particularity, which plaintiffs have not done. Merryman contends that plaintiffs have failed to plead the claims against him individually (for conversion, violation of Penal Code 496, and a common count for money had and received). The

---

[18] Plaintiffs allege claims against Merryman and OPMNY based upon conversion; violation of California Penal Code section 496 related to receipt of stolen property; a common count for money had and received; and a claim under California's Unfair Competition Law ("UCL," Business & Professions Code 17200.)

[19] Merryman and OPMNY do not move to dismiss the UCL claim on these grounds.

13

1  Court previously dismissed the claims against Merryman for failure to allege sufficient facts.

2  Defendants contend that the allegations in paragraphs 80 through 96 of the FAC do not provide

3  enough new factual detail to support individual liability against Merryman.

4  Incorporating allegations from the *Gephart* action, the FAC alleges that Merryman

5  commingled funds of OPMNY with another company (Affinitas, Inc.), embezzled and used

6  OMPNY's funds for his personal gain, and directed others to alter the records of the company to

7  facilitate that misuse. (FAC ¶¶ 23, 80-96.) The FAC alleges that Merryman conducted OPMNY's

8  money transmission business improperly and unlawfully, including settling merchant accounts,

9  embezzling funds from merchants, and altering merchant records. (*Id.* ¶¶ 91-94.) Specifically

10 with respect to plaintiffs, the FAC alleges Merryman siphoned off money from plaintiffs' funds

11 for his own personal gain after they were received by OPMNY from AMDP. (*Id.* ¶¶ 58, 91.)

12 The allegations against Merryman describe his personal wrongdoing, not merely liability

13 as OPMNY's alter ego. Both California and Nevada law make managers of limited liability

14 companies personally liable for their tortious conduct without the need to pierce the corporate veil.

15 *People v. Pacific Landmark, LLC*, 129 Cal.App.4th 1203, 1214-15; *see United States Liab. Ins.*

16 *Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595 (1970) ("Directors or officers of a corporation do

17 not incur personal liability for torts of the corporation merely by reason of their official position,

18 unless they participate in the wrong or authorize or direct that it be done."); *Gardner on Behalf of*

19 *L.G. v. Eighth Judicial District Court*, 133 Nev. 730, 734 (Nev. 2017) ("A plain reading of NRS

20 86.371 protects members and managers only from individual liability resulting from the debts or

21 liabilities of the LLC, not liabilities incurred as a result of individual acts."). Presumably, in

22 addition to incorporating allegations made by other people in other actions, plaintiffs' counsel has

23 undertaken a reasonable investigation to ensure that these "factual contentions have, or will likely

24 have, evidentiary support after a reasonable opportunity for further investigation and discovery,"

25 as counsel must under Rule 11 of the Federal Rules of Civil Procedure.[20] As a pleading matter,

---

[20] In their opposition to the motion, plaintiffs ask the Court to take judicial notice of documents filed in the *Gephart* action—including a complaint, a declaration, and a temporary restraining order entered in the action—from which the allegations in the FAC are drawn. (Dkt. No. 60-1.) Merryman and OPMNY argue that the Court cannot take judicial notice of facts

14

the FAC alleges a plausible basis for Merryman's individual liability regardless of the sufficiency of the alter ego allegations in the FAC. The motion to dismiss on these grounds is, therefore, **DENIED**.

### C. Failure to Allege Conversion, Penal Code § 496, and Common Count

Finally, Merryman and OPMNY argue that plaintiffs' claims against them for conversion, violation of California Penal Code section 496, and money had and received fail because plaintiffs allege the funds due and owing to them are not in possession of either of these two defendants but instead are in the possession of non-party Affinitas, Inc. (FAC ¶¶ 141-43 [conversion]; 152 [Penal Code § 496]; 171-72 [Money Had and Received].)

Plaintiffs allege that Merryman controls Affinitas, Inc.'s bank account and Merryman caused OPMNY to transfer funds stolen from plaintiffs into the Affinitas, Inc. account. (FAC ¶¶ 58, 142-43.) Plaintiffs argue that the proceeds they are owed constitute a specific, identifiable sum transferred from AMDP to OPMNY to make payments to them, and that Merryman and OPMNY intentionally and substantially interfered with plaintiffs' right to possession of those proceeds. While citing no authority in support of their position, Merryman and OPMNY contend that each of the claims requires a plausible allegation that the funds due and owing are in Merryman and OPMNY's *possession*.

The elements of these three claims are similar. More to the point here, the Court's examination of the relevant authority indicates that all three *lack* a requirement that the defendant be in possession of the funds alleged to have been taken from or owed to plaintiffs as defendants argue. As to the first, "[c]onversion is the wrongful exercise of dominion over the property of another[, t]he elements of [which] are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

---

alleged in other court documents in the context of this motion as they are not a proper subject for judicial notice and are hearsay. While the Court agrees that it cannot take judicial notice of the contents of filings in other actions for the truth of the matters asserted therein, the Court is not required to make any findings of fact on a motion to dismiss, making their truth irrelevant in any event. Because the statements in those other documents have no bearing on the sufficiency of the *pleadings*, judicial notice of those documents is **DENIED**.

damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (internal citation omitted). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543–44 (1996).[21]

As to the second claim, California Penal Code section 496(c) permits "any person who has been injured by a violation of section 496(a)… may bring an action for three times the amount of actual damages, if any sustained by the plaintiff, costs of suit, and reasonable attorney's fees." (Cal. Penal Code § 496(c).) Section 496(a) makes it a criminal offense to "bu[y] or receiv[e] any property that has been stolen or that has been obtained in any manner constituting theft or extortion" or to conceal, sell, or withhold such property from the owner.[22] As to the third claim targeted by the motion, "[a] cause of action for money had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013) (internal citations and punctuation omitted). An allegation that the defendant is still in *possession* of the identified funds is not required for any of the claims.

In short, the grounds for dismissal argued by these defendants are without merit and their motion to dismiss under Rule 12(b)(6) is **DENIED**.

//

---

[21] The Court notes, however, that a cause of action for conversion requires identification of a specific sum owned by plaintiff rather than a generalized claim for money lost or owed. *See PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395–97 (2007). Given the lack of briefing on this point, the Court will resolve the issue, as necessary, in later proceedings. The parties are **DIRECTED** to meet and confer on the topic and determine whether the issue can be addressed by stipulation rather than further motion practice, and so note in their case management statement.

[22] Recent California authority issued after the close of briefing in this matter indicates that the claim under section 496(c) here might not be viable for other reasons not raised by Merryman and OPMNY. *Siry Inv., L.P. v. Farkhondehpour*, No. B277750, 2020 WL 1026822, at *18 (Cal. Ct. App. Mar. 3, 2020), *as modified on denial of reh'g* (Mar. 23, 2020) ("treble damages are not available under Penal Code section 496, subdivision (c) in cases where the plaintiff merely alleges and proves conduct involving fraud, misrepresentation, conversion, or some other type of theft that does not involve 'stolen' property. Again, given the lack of briefing on this issue, the Court will resolve it, if necessary, at a later juncture. The parties are **DIRECTED** to meet and confer on the topic and determine whether the issue can be addressed by stipulation rather than by further motion practice.

Thus, for the reasons set forth above, the grounds for dismissal argued by defendants Merryman and OPMNY fail to persuade, and their motion to dismiss the FAC is **DENIED** in its entirety.

## V. FURTHER ORDERS

Defendant AMDP is **DISMISSED**.

Rosland Operations Inc. is **DISMISSED** as a party-plaintiff.

Defendants Merryman and OPMNY are directed to file their answer to the FAC no later than thirty days from the date of this order.

The Court sets the case for a case management hearing on **May 18, 2020**. Normally, those would be conducted at 2:00 p.m. at the federal courthouse in Oakland, California. In light of the national pandemic, the Court may have different procedures in place at that time. The parties shall timely file a joint case management conference statement and see the Court's scheduling page for updates regarding the logistics of the conference.

This terminates Docket Nos. 52 and 61.

**IT IS SO ORDERED.**

Dated: April 6, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**